**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

NORTHERN STATES POWER COMPANY d/b/a Xcel Energy,

Plaintiff,

v.

FEDERAL TRANSIT ADMINISTRATION; MINNESOTA DEPARTMENT OF TRANSPORTATION; ELWYN TINKLENBERG, Commissioner of Transportation, individually and officially, MINNESOTA METROPOLITAN COUNCIL; and the STATE OF MINNESOTA,

Defendants.

Civil No. 01-295 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO STAY ORDER GRANTING PRELIMINARY INJUNCTION**

---

Timothy R. Thornton, BRIGGS AND MORGAN, 2400 IDS Center, 80 South Eighth Street, Minneapolis, MN, 55402, for plaintiff.

Mary L. Trippler, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN, 55415, for defendant Federal Transit Authority.

Donald J. Mueting and Ann K. Bloodhart, Assistant Attorneys General, OFFICE OF THE MINNESOTA ATTORNEY GENERAL, 525 Park Street, #200, St. Paul, MN, 55101, for defendants Minnesota Department of Transportation, Elwyn Tinklenberg, and the State of Minnesota.

Lewis A. Remele, Jr., Andrew L. Marshall, and J. Scott Andersen, BASSFORD, LOCKHART, TRUESDELL & BRIGGS, P.A., 3550 Multifoods Tower, 33 South Sixth Street, Minneapolis, MN, 55402, for defendant Minnesota Metropolitan Council.

FILED JUN 1 4 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD. ______
DEPUTY CLERK ______

On May 24, 2001, this Court granted the motions of the Minnesota Department of Transportation ("MnDOT"), Elwyn Tinklenberg, the State of Minnesota (collectively "State defendants"), and the Minnesota Metropolitan Council ("Met Council") for preliminary injunctive relief. The Court ordered that plaintiff Xcel Energy must comply with the directives of MnDOT concerning the relocation of its utility facilities in connection with the Hiawatha Light Rail Project ("LRT project"). Now before the Court is plaintiff's motion to stay the preliminary injunction for sixty days pending its expedited appeal pursuant to Rule 62(c) of the Federal Rules of Civil Procedure.

Plaintiff's motion for a stay is denied. It has not demonstrated to the Court that it is likely to succeed on the merits or that it will suffer irreparable harm absent a stay. Moreover, a stay under these circumstances is not in the public interest and would substantially harm the State defendants and Met Council. A stay of the preliminary injunction would simply serve to further delay the LRT project and increase its costs – one of the primary reasons the Court issued the preliminary injunction.

## DISCUSSION

Rule 62(c) of the Federal Rules of Civil Procedure permits a court "in its discretion [to] suspend, modify, restore or grant an injunction during the pendency of appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." Fed. R. Civ. Pro. 62(c). In evaluating a motion pursuant to Rule 62(c), the Court is to consider the following four factors: (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether

the applicant will be irreparably harmed absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) whether a stay is in the public interest. *United States v. City of St. Paul*, 193 F.R.D. 640 (D. Minn. 2000) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

Plaintiff acknowledges that the factors to be considered by the Court in evaluating its Rule 62 motion are virtually identical to the factors considered by the Court in assessing the initial motion for a preliminary injunction. However, plaintiff argues that this case involves a number of complex and novel legal issues warranting a stay of the preliminary injunction until the Eighth Circuit resolves plaintiff's appeal.

**1. Likelihood of Success on the Merits**

In its May 23, 2001 order granting the State defendants' and the Met Council's motion for preliminary injunctive relief, the Court concluded that the State defendants and Met Council had demonstrated a likelihood of success on the merits. The Court reasoned that the franchise agreement was silent on the issue of relocation reimbursement under the facts of this case, but that the Franchise Agreement is clearly subject to City and State police powers. While the Franchise Agreement clearly provides that plaintiff is entitled to relocation expenses when the City of Minneapolis vacates a street or right of way, no such vacation is currently contemplated in the plans for the LRT project. The silence of the franchise agreement on this issue coupled with the clear language that it is subject to City and State police powers, indicates that the State defendants and Met Council are likely to succeed on the merits. This conclusion is bolstered by the City's

clear intent, as demonstrated in the Minneapolis municipal code, that utilities are to bear the cost of relocation expenses when relocation is required for a proper governmental purpose.

Plaintiff also implies that the issue of MnDOT's authority to order relocation of its utility facilities provides a basis upon which it may well succeed on appeal. For the same reasons articulated in the Court's May 23, 2001 order, the Court does not believe plaintiff is likely to succeed on this issue. The Court has little doubt that the legislature intended to give MnDOT the authority to order uncompensated relocation of utility facilities to facilitate the construction of the LRT project. The Court is also confident that the State has the power not only to order uncompensated relocation, but also to expressly delegate some of its police powers to a state agency such as MnDOT. Nowhere in its moving papers has plaintiff explained why the Court's legal analysis was incorrect or misguided and nowhere has it raised any new arguments on the merits that would alter the Court's previous determination.

In considering the likelihood of success on the merits, the Court is also to focus on whether the case involves the determination of substantial and novel legal questions. *Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County*, 927 F. Supp. 348, 350 (D. Minn. 1996). Plaintiff contends that the State of Minnesota has never before mandated relocation of utility facilities that are subject to a franchise agreement which contemplates utility reimbursement. It also argues that the interplay between the common law and the franchise agreement presents novel legal interpretation issues. Plaintiff asserts that MnDOT's exercise of jurisdiction in this case is unprecedented and that there is a

significant question as to the authority of a state agency to exercise police powers under the circumstances here.

While the Court agrees with plaintiff that the Eighth Circuit has not explicitly addressed some of the unique issues present in this case, the Court does not agree that the case presents such novel and complex legal questions to justify issuing a stay of the preliminary injunction. In fact, the Court believes that basic contract and statutory interpretation principles control the disposition of the legal issues in this case. At issue in this case is the language of the Franchise Agreement as well as the interpretation of a Minnesota statute purporting to delegate to MnDOT the power to facilitate all aspects of the LRT project. As such, the Court is not convinced that the novelty and complexity of the issues presented on appeal alone justifies ordering a stay of the preliminary injunction. Accordingly, plaintiff has not made a strong showing that it is likely to succeed on the merits.

**2. Irreparable Harm**

Plaintiff argues that it will be irreparably harmed if the stay is not granted. Plaintiff contends that the Court's current order forces it to begin the largest relocation in State history and that once started the relocation cannot be reversed. The tight schedule of the project, it argues, will place the downtown energy supply at risk and will endanger worker safety.

These arguments do not convince the Court that plaintiff will be irreparably harmed absent a stay. As noted in the order granting the preliminary injunction, the

Court seriously considered the risk to the downtown energy supply and the safety of the downtown workers in making its decision. Based on the current record before it, the Court does not find an immediate or imminent risk to the power supply or to city workers. The Court remains confident that the parties can work together to create a schedule and a relocation plan that minimizes these potential risks but facilitates progress of the LRT project.

Further, the fact that the relocation project is considerable in scope and complex in nature does not persuade the Court that irreparable harm will occur without a stay. While the State defendants and Met Council have demonstrated a likelihood of success on the merits, the question of who will ultimately pay for relocation costs will be decided at trial. Plaintiff will certainly be immediately burdened with the cost of planning and commencing the relocation of its utility facilities. However, those costs alone are not sufficient to demonstrate irreparable harm in this case. If the plaintiff ultimately prevails on the merits, all costs associated with relocation will be reimbursed.

Additionally, much of the sixty days for which plaintiff seeks the stay will likely be spent planning and organizing the relocation effort rather than physically removing utility lines from city streets. The Court therefore does not believe that plaintiff will be irreparably harmed by complying with the directives of MnDOT and proceeding with the initial stages of the relocation effort.

**3. Injury to Other Parties**

In granting the motions for preliminary injunctive relief, the Court concluded that the State defendants and the Met Council carried their burden of demonstrating the existence of irreparable harm if plaintiff was not ordered to immediately begin relocating its utility facilities east of Nicollet Avenue in Fifth Street. The harm consists of delay to the project and the costs associated with delaying construction, which threaten the existence of the LRT project. That threatened injury remains and will only be amplified if the Court issues a stay. Plaintiff has argued throughout the case that the current schedule for relocation of its utility facilities is too aggressive. However, plaintiffs now seek a further delay of the relocation project, which would only serve to create additional time pressures on an already tight construction schedule. The Court found that the status quo under these circumstances was the continued construction of the LRT project. Any further delay will only increase project costs, threatening the continued viability of the project. The harm to the State defendants and the Met Council if a stay were ordered is therefore considerable.

**4. Public Interest**

The public interest is not served by issuing a stay under these circumstances. As noted above, a stay will result in further delay to a project that the state legislature has approved and that federal, state, and local entities have supported through funding commitments. Delay will only increase the costs of the LRT project and unnecessarily

extend its schedule. This in turn will create a situation in which public use of the LRT will be stalled, suspended, or possibly foreclosed if the project is cancelled.

## CONCLUSION

Plaintiff's motion for a stay of the Court's preliminary injunction is denied. Each of the four factors that the Court must consider weighs against issuing a stay. The Court does not believe that the legal issues presented in this case are sufficiently complex or novel to warrant a stay absent a more compelling showing on the remaining factors. During the next sixty days, plaintiff will likely be engaged in the planning and initial stages of relocating its utility facilities. The Court sees no reason to further delay these initial phases of the relocation effort.

## ORDER

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that plaintiff's motion for a stay of injunction pending appeal [Docket No. 46] is **DENIED.**

DATED: June 14, 2001
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge