**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**FOURTH DIVISION**

---

Northern States Power Company,
a Minnesota Corporation, d/b/a Xcel Energy,

Plaintiff,

vs.

Federal Transit Administration, an administration of the United States Department of Transportation, the Minnesota Department Of Transportation, Elwyn Tinklenberg, Commissioner of Transportation, individually and officially, the Metropolitan Council and the State of Minnesota,

Defendants.

**Civil File No. 01-CV-295 JRT/FLN**

**DEFENDANT METROPOLITAN COUNCIL'S MEMORANDUM IN SUPPORT OF ITS BILL OF COSTS**

---

Defendant Metropolitan Council (the Metropolitan Council) filed a Bill of Costs on June 8, 2004. Plaintiff Xcel Energy (Xcel) filed objections on July 1, 2004. The Court should deny Xcel's objections and direct the clerk of court to tax the costs submitted by the Metropolitan Council for the following reasons.

## I. BOND PREMIUMS, EXPERT FEES, COPY COSTS, APPELLATE PRINTING COSTS AND THE COST OF DEPOSITION TRANSCRIPTS ARE ALL RECOVERABLE DAMAGES UNDER MINN. R. 8810.3300.

All costs contained in the Metropolitan Council's Bill of Costs are recoverable under Minn. R. 8810.3300, subp. 3 because they were incurred by the Metropolitan Counsel by reason of Xcel's failure to remove its utilities facilities from Fifth Street when lawfully ordered to do so by the state of Minnesota. [1]

---

[1] The Metropolitan Counsel will be bringing a separate motion to recover its attorney's fees based upon the provisions of Minn. R. 8810.3300, subp. 3.

Minn. R. 8810.3300, subp. 3 provides that the State may recover from a utility "***damage of any nature whatsoever occasioned by reason of not having removed said utility within the time specified in said notice***." (2003) (emphasis supplied). Although it was properly served with an order to begin planning for the relocation of its facilities, Xcel refused to relocate its utility facilities from the Fifth Street corridor and opposed paying for its own relocation. (Apr. 17, 2001 Barron Aff. ¶ 7.) Rather than comply with the order, Xcel filed suit, asserting a myriad of constitutional, statutory, and common-law claims against the Metropolitan Council and other defendants. As a result, the Metropolitan Council had no choice but to move this Court for a preliminary injunction requiring Xcel to comply. The Metropolitan Council's damages – the cost of obtaining expert information needed to defend against Xcel's lawsuit, the premiums on an $8 million bond, the cost of deposition transcripts, copying costs and the cost of printing appellate briefs – were all caused by Xcel's refusal to relocate its facilities as required by the State. Xcel would not have moved its utilities had the Council not spent significant resources defending the lawsuit and requesting an injunction to force Xcel to comply with the State's order.

As the Court has repeatedly stated, it is a "fundamental principl[e] of municipal law" that "[m]unicipalities derive their power from the state." Therefore, the Metropolitan Council, as a municipality or quasi-municipality, derives its power from the state and is entitled to be held harmless by Xcel. *N. States Power Co. v. Fed. Transit Admin.*, No. 01-295, 2002 WL 31026530, at *9 (D. Minn. Sept. 10, 2002). Because the Metropolitan Council stands in the shoes of the State for purposes of Rule 8810.3300, Xcel must assume all liability and hold the Metropolitan Council harmless from all damages caused by Xcel. All of the costs incurred by the

Metropolitan Council were occasioned by Xcel's refusal to act, and according to the language of the rule, Xcel is obligated to reimburse the Metropolitan Council for those expenditures.

## II. BOND PREMIUMS, EXPERT FEES, THE COST OF DEPOSITION TRANSCRIPTS, APPELLATE PRINTING COSTS AND COPY COSTS ARE ALL RECOVERABLE ON ADDITIONAL INDEPENDENT BASES.

### A. INJUNCTION BOND PREMIUMS ARE PROPERLY TAXED AS COSTS PURSUANT TO FED. R. CIV. P. 54(d).

The Metropolitan Council seeks reimbursement of $57,350 for premiums paid for its Temporary Injunction Bond. Fed. R. Civ. P. 54(d) states, in part, that "costs, other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." (2004). Bond premiums are taxable as costs. *See Newton v. Consolidated Gas Co. of New York*, 265 U.S. 78, 84 (1924) (allowing bond premiums as costs).

Where the giving of the bond is "compulsory, whether by order of court or by statute," reason requires that the premiums on such bonds are included in a bill of costs. *Crowe v. Peaslee-Gaulbert Co*., 37 F.2d 216, 218 (1st Cir. 1930). *See also Dept. of Highways v. McWilliams Dredging Co*., 10 F.R.D. 107, 108 (W.D. La. 1951) *aff'd*, 187 F.2d 61 (5th Cir. 1951) (holding that the bond premium was taxable because the giving of the bond was necessary); *United Waterworks Co. v. Stone*, 29 F.2d 428 (D. Mass. 1912) (holding that prevailing party entitled to tax premiums paid on bond required by the court). Furthermore, courts routinely allow litigants to tax or otherwise recover costs of complying with court orders. *See United States v. Friedman*, 532 F.2d 928, 936-37 (3d Cir. 1976) (stating that the district court has power to require government to reimburse banks for cost of complying with IRS summons); *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, No. 77 C 4556, 1987 WL 12679, at *4 (N.D. Ill. June 17, 1987) (permitting taxation of cost of complying with "security mechanism" devised by court); *United States v. First Ga. Bank*, Nos. C82-273A & C82-277A,

1987 WL 46896, at *4 (N.D. Ga. June 8, 1987) (allowing reimbursement for cost of complying with order to produce documents to IRS); *McWilliams at 108* (noting that the giving of the bond required for removal was necessary, and the premium paid to supply it should be allowed.)

In the instant case, the district court directed the Metropolitan Council to post a $50,000 bond in connection with its request for a temporary injunction. At Xcel's request, the Eighth Circuit Court of Appeals then increased the amount of the bond to $8 million. Because the court required the bond, the Metropolitan Council, as the prevailing party, is entitled to recover the cost of supplying the bond under Fed. R. Civ. P. 54(d). Accordingly, the Court should deny Xcel's objection.

**B. APPELLATE PRINTING COSTS MAY BE TAXED IN THE DISTRICT COURT UNDER 28 U.S.C. § 1920.**

The Metropolitan Council seeks reimbursement in the amount of $1,335.19 to cover the costs of printing its appellate brief and index. While Xcel correctly points out that neither Federal Rule of Appellate Procedure 39(e) nor the Eighth Circuit Rule of Appellate Procedure 39A explicitly provide for a district court to tax the cost of printing appellate briefs, those rules do not represent the whole of controlling authority. 28 U.S.C. § 1920 provides in part that "[a] judge or clerk of ***any*** court of the United States may tax as costs the following: (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case." (2004) (emphasis supplied). The cost of printing appellate briefs is taxable in a district court under either subsection (3) or subsection (4). *Shannon v. United States Dept. of Housing and Urban Development*, 433 F. Supp. 249, 252 (E.D. Pa. 1977). Accordingly, the court should deny Xcel's objection.

**C. THE DEPOSITION CHARGES INCLUDED IN THE BILL OF COSTS ARE PROPERLY TAXED UNDER 28 U.S.C. § 1920(2).**

The Metropolitan Council seeks to recover $10,527.84 spent on depositions needed for use in this case. The costs of taking and transcribing depositions reasonably necessarily for litigation are generally awarded to prevailing parties under 28 U.S.C. § 1920. *See Zotos v. Lindbergh School District*, 121 F.3d 356 (8th Cir. 1997) (holding that the district court did not abuse its discretion in awarding costs for certain depositions). Even if a deposition is not introduced at trial, a district court may award costs if the deposition was "necessarily obtained for use in [a] case and was not ***purely*** investigative." *Zotos* at 363 (*citing Slagenweit v. Slagenweit*, 63 F.3d 719, 720 (8th Cir. 1995)) (emphasis supplied).

Xcel suggests that the depositions included in the Bill of Costs should not be taxed because they were not used in a court proceeding and were therefore not "necessary" to the case. (Xcel's Obj. at 2). To begin with, whether the district court relied upon the depositions in its ruling on summary judgment does not determine whether the depositions were necessarily obtained for use in the case. Rather, the important consideration is whether the depositions reasonably seemed necessary at the time they were taken. *Zotos* at 363. *See also* 10 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2676, at 424 (Civil 3d. 1998). It would be "inequitable" to penalize a party who prevails on a motion for summary judgment "by not awarding costs associated with that portion of discovery which had no bearing on the dispositive motion, but which appeared otherwise necessary at the time it was taken for proper preparation of the case." *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1205 (10th Cir. 2000) (*citing Callicrate v. Farmland Industries, Inc.*, 139 F.3d 1336, 1340 (10th Cir. 1998)). Ultimately, a deposition is not deemed unnecessary "even if it is not strictly essential to the court's resolution of the case" if the deposition is offered into evidence, is not frivolous, and is within the bounds

of vigorous advocacy." *Callicrate v. Farmland Industries, Inc.*, 139 F.3d 1336, 1340 (10th Cir. 1998).

At the time they were taken, all of the depositions listed in the Bill of Costs were necessary for use in this case. In part, the Metropolitan Council deposed Xcel employees to determine the feasibility of moving the electric facilities at issue. The Metropolitan Council also had an interest in developing Xcel employees' statements for impeachment purposes at trial. With respect to its own witnesses, the Metropolitan Council needed to review the deposition transcripts to ensure that the deposition record was clear and accurate and would not pose procedural problems at trial. In addition, the Metropolitan Council used the deposition transcripts of its employees to develop arguments for a summary judgment motion. While it may be tempting to observe that some of the depositions ultimately played little role in the court's ruling on summary judgment, "caution and proper advocacy may make it incumbent on counsel to prepare for all contingencies which may arise during the course of litigation which include the possibility of trial" and the Metropolitan Council is entitled to recoup the costs for materials reasonably necessary for its preparation. *Callicrate v. Farmland Industries, Inc.*, 139 F.3d 1336, 1340 (10th Cir. 1998). Furthermore, the fact that the Metropolitan Council included some of the depositions in its submission to the district court indicates that it believed the depositions would play a role in the resolution of the case. Far from being ***purely*** investigative, the depositions listed in the Bill of Costs were important elements of the Metropolitan Council's preparation for litigation and are properly taxed under 28 U.S.C. § 1920.

**D. EXPERT FEES MAY BE RECOVERED PURSUANT TO FED. R. CIV. P. 54(d).**

The Metropolitan Council incurred $25,403.95 in costs for expert consultations. As the prevailing party, the Metropolitan Council is entitled to recover that amount under Fed. R. Civ. P. 54(d).

Fed. R. Civ. P. 54(d) "codifies the presumption that … costs will be awarded to prevailing parties." *Police Retirement Sys. v. Midwest Inv. Advisory Serv*., 940 F.2d 351, 358-59 (8th Cir. 1991). The Eighth Circuit Court of Appeals has "seen fit to award expert fees" under Fed. R. Civ. P. 54(d) "when the expert's testimony was crucial to the issues decided." *Nemmers v. City of Dubuque*, 764 F.2d 502, 506 (8th Cir. 1985) (*citing Coleman v. City of Omaha*, 714 F.2d 804, 809 (8th Cir. 1983)). *See also Nebraska Pub. Power Dist. v. Austin Power, Inc*., 773 F.2d 960 (8th Cir. 1985) and *Wilmington v. J.I. Case Co*., 793 F.2d 909 (8th Cir. 1986) (noting that expert witness fees are recoverable under Fed. R. Civ. P. 54(d)).

Although the Metropolitan Council's experts did not have the opportunity to testify at trial, the Metropolitan Council should not be penalized for obtaining summary judgment. *See Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1205 (10th Cir. 2000) (*citing Callicrate v. Farmland Industries*, *Inc*., 139 F.3d 1336, 1340 (10th Cir. 1998)). The Metropolitan Council is entitled to costs because the information experts provided about Xcel's ability to move its electric facilities was at the heart of the case, and the Metropolitan Council needed to obtain such information in order to defend itself in the litigation. *See Nebraska Pub. Power Dist. v. Austin Power, Inc*., 773 F.2d 960, 975 (8th Cir. 1985) (stating that the court has awarded expert fees under Fed. R. Civ. P. 54(d) when it has determined, among other things, that the expenditures were necessary to the litigation). Because consultations with these experts were necessary to

respond to Xcel's claims, as the prevailing party the Metropolitan Council is entitled to recoup the cost of its expert fees.

**E. THE COPYING CHARGES SUBMITTED IN THE BILL OF COSTS ARE PROPERLY TAXED UNDER 28 U.S.C. § 1920(4).**

The Metropolitan Council seeks reimbursement in the amount of $12,255.23 to cover the cost of photocopies. Approximately one-half of that cost was for in-house copies; the remainder represents charges from outside copying services. The clerk is authorized to tax "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920(4). "Copies may be deemed necessary even if not used in the trial of the matter." *United States v. Davis*, 87 F. Supp. 2d 82, 88 (D.R.I. 2000). The costs of copying materials "attached to a dispositive motion" may be taxable when "the party seeking those costs prevails on that motion." *United Intern. Holdings, Inc. v. Wharf (Holdings) Ltd.*, 174 F.R.D. 479, 484 (D. Colo. 1997). For purposes of the statute, the language "necessarily obtained for use in the case" does not mean that the copy must be admitted into evidence. *Andrews v. Suzuki Motor Co.*, 161 F.R.D. 383, 386 (S.D. Ind. 1995). Rather, to be "properly prepared for trial, an attorney will necessarily obtain records and make copies which, for one reason or another, are not ultimately introduced." *Id.* This litigation, which spanned more than three years, concerned complex issues of regulated utilities and metropolitan infrastructure and required the Metropolitan Council to conduct a massive investigation and discovery process. Copies of documents were made not only as part of discovery, but in preparation for depositions and dispositive motions. The Metropolitan Council incurred fees for copying documents necessary to respond to Xcel's litigation and is not seeking reimbursement for "extravagant, useless, or obviously unnecessary copies." *Id.* Accordingly, the Court should deny Xcel's objection.

**BASSFORD REMELE**
***A Professional Association***

Dated: July 8, 2004

By: _s/ Andrew L. Marshall
Lewis A. Remele, Jr. (License #90724)
Andrew L. Marshall (License #176849)
Attorneys for Defendant Metropolitan Council
33 South Sixth Street, Suite 3800
Minneapolis, Minnesota 55402-3707
(612) 333-3000