**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Northern States Power Company, a Minnesota corporation d/b/a as Xcel Energy,

Plaintiff,

v.

Federal Transit Administration, an administration of the United States Department of Transportation; Minnesota Metropolitan Council; State of Minnesota; Minnesota Department of Transportation; and Carol Molnau, Lieutenant Governor,

Defendants.

Civil No. 01-295 (DWF/JSM)

**MEMORANDUM OPINION AND ORDER**

---

Timothy R. Thornton, Esq., and Thomas J. Bastings, Jr., Esq., Briggs & Morgan, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, counsel for Plaintiff.

Mary Trippler, Assistant United States Attorney, 600 United States Courthouse, 300 Fourth Street South, Minneapolis, MN 55415; Ann K. Bloodhart, and Donald J. Mueting, Assistant Attorneys General, Minnesota Attorney General's Office, 445 Minnesota Street, St. Paul, MN 55101; Andrew L. Marshall, Esq., and Lewis A. Remele, Jr., Esq., Bassford Remele, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402-3701, counsel for Defendants.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on January 14, 2005, pursuant to the Motion for Summary Judgment brought by Defendants Federal Transit Administration ("FTA"), Minnesota Department of Transportation ("MnDOT"), Minnesota Metropolitan Council ("Metropolitan Council"), Minnesota Lieutenant Governor Carol

Molnau ("Molnau") and the State of Minnesota (collectively "the Defendants"). Specifically, Defendants contend that they are entitled to recover attorney fees from Plaintiff Xcel Energy ("Xcel") pursuant to Minn. R. 8810.3300, subp. 3. Xcel opposes the motion and requests that the Court either dismiss the claim or, in the alternative, grant Xcel summary judgment as to the issue. For the reasons stated below, the Court denies the Defendants' Motion for Summary Judgment and grants Xcel's Motion for Summary Judgment.

**Background**

The Light Rail Transit ("LRT") project is an 11.6 mile light-rail transit line running from downtown Minneapolis to the Mall of America in Bloomington, Minnesota. MnDOT was responsible for the design and construction of the project. The project was funded, in part, by the Federal Transit Administration pursuant to the Hiawatha Corridor Light Rail Project Full Funding Grant Agreement ("Grant Agreement"). The Grant Agreement provides that the Metropolitan Council and MnDOT were partners in the management of the LRT project. After completion of the LRT project, the LRT will be owned and operated by the Metropolitan Council.

The LRT was designed to travel along the portion of Fifth Street between Third Avenue and the Metrodome in downtown Minneapolis. The area the LRT was designed to travel along is commonly known as the Fifth Street Corridor. Xcel has maintained utility facilities in the Fifth Street Corridor for many years. Xcel's utilities were placed in the Fifth Street Corridor pursuant to a franchise agreement with the City of Minneapolis.

Construction of the LRT project was set to begin on or about February 1, 2002. Therefore, MnDOT asserts that it held meetings with utility company representatives beginning in January 1999, to

coordinate and plan for utility relocation. On August 18, 2000, Xcel signed a letter of intent with MnDOT agreeing to relocate its utility facilities from the Fifth Street Corridor at its own expense. Despite signing the letter of intent, Xcel subsequently refused to relocate its utilities and opposed paying for the relocation. On November 29, 2000, MnDOT ordered Xcel to assess the impact to its utilities of LRT construction and to submit a relocation plan and schedule by December 29, 2000. MnDOT later extended the deadline for the relocation plan to January 29, 2001. When Xcel failed to comply with the order, MnDOT demanded that: (1) a relocation plan be submitted by February 15, 2001; (2) relocation construction begin by February 27, 2001; and (3) Xcel complete the relocation by February 1, 2002.

Instead of complying with MnDOT's order, Xcel filed this suit asserting a variety of constitutional, statutory, and common law claims against the Defendants. Defendants responded by moving the court for a preliminary injunction requiring Xcel to comply with MnDOT's order. The court granted Defendants' motion, ordering Xcel to relocate its facilities. The district court's injunction was affirmed on appeal.

Xcel relocated its utilities in the Fifth Street Corridor east of Nicollet Avenue. However, Xcel continued to litigate the issue of who was responsible for the costs of the utility relocation. Once discovery into the matter was completed, all of the parties moved for summary judgment. The court granted Defendants' motions and dismissed all of Xcel's claims. The Eighth Circuit affirmed the grant of summary judgment.

At this time, MnDOT and the Metropolitan Council assert a joint counterclaim against Xcel to recover attorney fees expended in the above-referenced litigation. MnDOT contends that it has

incurred $238,642 in attorney fees; the Metropolitan Council asserts that is has incurred $446, 264 in attorney fees. Xcel opposes MnDOT's and the Metropolitan Council's Motion for Summary Judgment and moves the Court to dismiss the counterclaim, or, in the alternative, grant summary judgment as to the counterclaim.

## Discussion

### I. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *See Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**A. Applicability of Minn. R. 8810.3300**

The Metropolitan Council and MnDOT have asserted a counterclaim against Xcel pursuant to Minn. R. 8810.3300 ("the Rule"). The Rule provides, in pertinent part:

> If at any time the state of Minnesota, acting through its commissioner of transportation, shall deem it necessary to make any improvements or changes on all or any part of the right-of-way of the trunk highway which affect a utility located on trunk highway right-of-way, then and in such event, the owner of the utility shall within 15 days after written notice from the commissioner of transportation or an authorized agent, proceed to alter, change, vacate, or remove said utility from the trunk highway right-of-way so as to conform to said trunk highway changes and as directed by the commissioner of transportation. Such work shall be done without any cost whatsoever to the state of Minnesota except as otherwise provided by law or agreement and shall be completed within the date specified in said written notice, which date shall be reasonable under the circumstances. *The utility shall assume all liability and save the state of Minnesota harmless from any and all claims of damage of any nature whatsoever occasioned by reason of not having removed said utility within the time specified in said notice.*

Minn. R. 8810.3300, subp. 3 (emphasis added).

MnDOT and the Metropolitan Council assert that the Rule entitles them to the recovery of attorney fees. MnDOT and the Metropolitan Council contend that they have the ability to avail themselves of the Rule and that the Rule encompasses an award of attorney fees. MnDOT and the Metropolitan Council also claim that the attorney fees at issue were related to the relocation of utility facilities from the Fifth Street Corridor.

Xcel asserts that the plain language of the Rule does not authorize the recovery of attorney fees. Xcel contends that the Rule is inapplicable to its relocation efforts because it removed its utilities from the Fifth Street Corridor before the deadline set for their removal by MnDOT. Finally, Xcel asserts that the Metropolitan Council cannot avail itself of the Rule's benefits because it is not a state actor.

The Court finds that MnDOT and the Metropolitan Council are not entitled to recover their attorney fees pursuant to the Rule. The Court finds it highly unlikely that the Rule's drafters intended the term "all claims of damage" to include attorney fees. However, the Court need not reach that issue because the Court finds the Rule inapplicable on its face because MnDOT and the Metropolitan Council did not suffer any damages as a result of Xcel's relocation efforts.[1] The Rule states that utility owners are responsible for all damages "occasioned by reason of not having removed said utility within the time specified in said notice." In this case, MnDOT ordered Xcel to relocate its utilities from the Fifth Street Corridor by February 1, 2002. Xcel litigated issues surrounding the relocation efforts, but ultimately relocated its utilities by the deadline. Further, the Court has reviewed the record and finds nothing in it that would support a finding that Xcel's legal challenges to the Defendants' relocation plan was motivated by bad faith.

MnDOT and the Metropolitan Council assert that such an interpretation of the Rule does not make sense because $300 million in federal funding might have been jeopardized if Xcel had not relocated its utilities by the deadline. The record is unclear as to whether the federal funding would have been in jeopardy had Xcel failed to relocate its lines. Nonetheless, the facts in this case, not hypothetical situations, guide the court's decision. *See U.S. v. Raines*, 362 U.S. 17, 21-23 (1960). Accordingly, the Court finds that Xcel is entitled to summary judgment on MnDOT and the Metropolitan Council's joint counterclaim. For the reasons stated, **IT IS HEREBY ORDERED:**

---

[1] At oral argument, Defendants' counsel argued that the attorney fees incurred came out of the federal grant money. The fact that Defendants made a decision to utilize grant money for attorney fees, rather than money from their general operating budgets, does not change the analysis of the Court.

1. Defendants Minnesota Department of Transportation's and Minnesota Metropolitan Council's Motion for Summary Judgment (Doc. No. 175) is **DENIED.**

2. Plaintiff Xcel Energy's Motion for Summary Judgment as presented in its written memorandum is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 23, 2005

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court